IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTORIA BIBBS,                          :
                                         :
             *Plaintiff*                 :
                                         :
        v.                               :      No. 05-41 E
                                         :
SUSAN D. STROHMEYER,                     :
FREDERICK G. MUNCH, KATHY                :
ZBORGROWSKI and JOHN                     :
CAVANAGH,                                :
                                         :
             *Defendants*                :

## BRIEF IN SUPPORT OF DEFENDANT MUNCH'S SECOND MOTION TO DISMISS AND/OR MOTION FOR MORE DEFINITE STATEMENT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(6) and (e)

AND NOW, comes the Defendant, Corporal Frederick G. Munch, by and through his attorneys, Marshall, Dennehey, Warner, Coleman & Goggin and Patrick M. Carey, Esquire, and in support of the Defendant's Motion, avers as follows:

### A.      FACTUAL AND PROCEDURAL HISTORY

For a statement of the factual and procedural history, please refer to Defendant Munch's Second Motion to Dismiss and/or Motion for More Definite Statement Pursuant to Federal Rules of Civil Procedure 12(b)(6) and 12(e).

### B.      STANDARD OF REVIEW

In reviewing a Motion to Dismiss, the Complaint must be read in the light most favorable to the Plaintiff and all well-pleaded, material allegations in the Complaint must be taken as true. Estelle v. Gamble, 429 U.S. 97, 97 S. Ct. 285, 50 L.Ed. 2d 251 (1976). However, where, as here,

Defendants move to have the Court dismiss Plaintiff's entire action for failure to state a claim upon which relief can be granted, Federal Rule of Civil Procedure 12(b)(6) allows the Court to consider evidence when considering the Motion to Dismiss. When evidence is submitted with a 12(b)(6) Motion, the rules require the Court to treat the Motion as a Motion for Summary Judgment.

In the instant case, the Plaintiff's original Complaint makes references to the police investigative reports of Cpl. Munch and other Millcreek police officers as well as references to the criminal complaint and related charging documents. Therefore, it is the position of the Defendant that this Motion may be considered a Rule 12(b)(6) Motion since these documents are part and parcel of the Plaintiff's original Complaint. In the alternative, the Court may consider this a Rule 56 Motion in order to examine and consider the police reports, criminal complaint and related documents.

The standards for the award of summary judgment under Federal Rule of Civil Procedure 56 are well known. Summary judgment may be entered if:

> The pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

F.R.C.P. 56(c). An issue is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

The party opposing a Motion for Summary Judgment may not rely on mere allegations to defeat such a Motion. Lujan v. Defenders of Wildlife, et al., 504 U.S. 555, 561, 112 S.Ct. 2130, 2137, 119 L. Ed. 2d 351 (1992). In fact, the party opposing a Motion for Summary Judgment must go beyond the pleadings and establish the existence of a genuine issue of material fact. Id.

**In the instant matter, Plaintiff's Amended Complaint is even less clear than her original Complaint and therefore Defendant Munch believes that further attempts by the Plaintiff to clarify her allegations against each Defendant would be futile. Therefore, Defendant Munch will base his reasons for his request for dismissal, in large part, upon the allegations set forth in plaintiff's original Complaint.**

## C.    CPL. MUNCH IS ENTITLED TO QUALIFIED IMMUNITY

> In a suit against an officer for an alleged violation of a constitutional right, the requisites of a Qualified Immunity defense must be considered in proper sequence. Where the Defendant seeks Qualified Immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. Qualified Immunity is an entitlement not to stand trial or face the other burdens of litigation. The privilege is an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial. As a result, we repeatedly have stressed the importance of resolving immunity questions at the earliest possible stage in litigation. Saucier v. Katz, 121 S.Ct. 2151, 150 L.E. 2d 272 (2001); citations omitted.

A Court required to rule upon the qualified immunity issue must consider, then, this threshold question: Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right? This must be the initial inquiry. Id; quoting Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789 (1991).

If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. Saucier v. Katz, 121 S.Ct. at 2156. If, on the other hand, a violation could be established, the next step is to ask whether the right was clearly established. The Court has stressed that in order for the right to be relevant to the case under consideration, the right the official is alleged to have violated must be clearly established in a particularized sense; that is, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. It is only when the right allegedly violated is defined with appropriate specificity that a Court can determine if it was in fact clearly established. Id. The dispositive inquiry in whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. If a reasonable officer would have known that his or her conduct violated the right, then the defendant officer is not entitled to qualified immunity for his or her actions. Harlow v. Fitzgerald, 457 U.S. 800, 813-20, 102 S.Ct. 2727, 73 L.Ed. 2d 396 (1982).

A government official is entitled to qualified immunity where the official's actions are objectively reasonable and do not violate the clearly established rights of which a reasonable person would know. Harlow v. Fitzgerald, 457 U.S. at 818 (1982); Hunter v. Bryant, 502 U.S. 224, 227 (1991), citing Anderson v. Creighton, 483 U.S. at 641 (1987). Qualified immunity provides "ample protection to all but the plainly incompetent or those who knowingly violate the law." Malley v. Briggs, 106 S.Ct. 1092 (1986). Additionally, reasonable mistakes in judgment fall within qualified immunity. Karnes v. Skrutski, 62 F.3rd 485, 498 (3rd Cir. 1995).

"Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of probable cause or exigent circumstances, for example, and in those situations courts will not hold that they violated the Constitution. Yet, even if a court were to hold that the officer violated the Fourth Amendment by conducting an unreasonable, warrantless search, Anderson [Anderson v. Creighton] still operates to grant officers immunity for reasonable mistakes as to the legality of their actions." Saucier v Katz, 121 S.Ct. at 2158-2159. Where an official could show that he held an objectively reasonable belief that his actions were lawful under the law, he will be immune from suits alleging a constitutional violation arising therefrom. Kiss v. County of Schuylkill, 866 F.Supp 1462, 1469 (E.D. Pa. 1994), citing Baker v. McCollan, 443 U.S. 137, 144 (1979). "In a case of malicious prosecution, the question of probable cause for the criminal prosecution which gave rise to the civil action is a question not for the jury, but for the Court. Simpson v. Montgomery Ward and Co., 354 Pa. 87, 91, 46 A.2d 674, 676 (1946). Although many of the cases cited regarding qualified immunity involve action by police officers, the concept of qualified immunity applies to many other government officials such as Borough Managers, Zoning Enforcement Officers, Councilpersons and Police Chiefs.

To defeat qualified immunity, a plaintiff must show that the unlawfulness of the specific conduct by the government official was apparently in light of existing law. Shaw v. Smith, 966 F.2d 127, 130 (3rd Cir. 1992). Accordingly, the plaintiff bears the burden of proving that the rights alleged to have been violated were clearly established at the time of the objectionable action. Hynson v. City of Chester, 827 F.2d 932, 934 (3rd Cir. 1987).

The Doctrine of Qualified Immunity provides the official with immunity from suit, not simply trial, and therefore, the District Court should resolve any immunity questions at the earliest possible stages of the litigation. Orsatti v. New Jersey State Police, 71 F.3d 480 (3rd. Cir.

1995). Therefore, when the material facts are not in dispute, the Court "may decide whether the officer is shielded by qualified immunity as a matter of law." Rowe v. Romano, 940 F. Supp. 798, 802 (E.D. Pa. 1996)(granting summary judgment based upon officer's claim of qualified immunity). Where a police officer can show that he held an objectively reasonable belief that the arrest was lawful, i.e. that probable cause existed, he will be immune from suits alleging a constitutional violation arising therefrom. Kis v. County of Schuylkill, 866 F.Supp. 1462, 1469 (E.D. Pa. 1994).

In the instant matter Cpl. Munch had probable cause to arrest the Plaintiff and is therefore immune. Additionally, at a minimum, Cpl. Munch had an "objectively reasonable belief" that the arrest was based upon probable cause based upon Munch's review of the investigation by the Office of Children and Youth, the investigation by the District Attorney's Office, and the information provided by the Child Advocacy Center after interviewing both the victim and Plaintiff. Further, charges were filed at the direction of the District Attorney's Office and only after the Magisterial District Judge concluded that probable cause existed. Therefore Cpl. Munch is immune from suit pursuant to the Doctrine of Qualified Immunity and the Plaintiff's claims should be dismissed.

D. **DEFENDANT MUNCH ACTED WITH PROBABLE CAUSE**

The existence of probable cause is generally an issue of fact for the jury, but "[b]ecause the qualified immunity doctrine provides the official with immunity from suit, not simply trial, the district court should resolve any immunity questions at the earliest possible stage of the litigation. Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)(citations omitted); Anderson v. Creighton, 483 U.S. 635, 646 n.6 (1987). Therefore, when the material facts are not

disputed, the court "may decide whether the officer is shielded by qualified immunity as a matter of law." Rowe v. Romano, 940 F.Supp. 798, 802 (E.D. Pa. 1996)(granting summary judgment based upon officer's claim of qualified immunity).

A party states a cause of action for violation of civil rights only where the party can show that the Defendant deprived him of a right secured by the Constitution and the laws of the United States. Baker v. McCollan, 443 U.S. 137, 144 (1979); Brown v. Stewart, 910 F. Supp. 1064 (W.D. Pa. 1996); see 42 U.S.C.A. §1983. In the instant matter, the Plaintiff has arguably raised a claim under the Fourth Amendment regarding her arrest and a general claim under the Fourteenth Amendment.

"Probable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." Orsatti v. New Jersey State Police, 71 F.3d 480, 483 (3d Cir. 1995)(citing Dunaway v. New York, 442 U.S. 200, 208 n. 9 (1979).

In reviewing the Affidavit of Probable Cause attached to the Criminal Complaint prepared by Cpl. Munch and approved by the Magisterial District Judge, the information contained therein is sufficient to establish the quantum or proof necessary to support an Arrest Warrant. As the Supreme Court stated in Brinegar v. United States, 338 U.S. 160, 173, 69 S. Ct. 1302(1949), "there is a large difference between the two things to be proved (guilt versus probable cause) as well as between the tribunals which determine them, and therefore a like difference in the quanta and modes of proof required to establish them." Moreover, law enforcement authorities are permitted and expected to draw reasonable inferences based on their knowledge and experience, United States v. Ortiz, 422 U.S. 891, 95 S. Ct. 2585(1975), and such

conclusions should not be defeated by hypertechnical readings of affidavits by judges or magistrates, <u>United States v. Ventresca</u>, 380 U.S. 102, 85 S. Ct. 741(1965); <u>United States v. Tehfe</u>, 722 Fed.2d 1114 (3rd Cir. 1983).

Cpl. Munch clearly had probable cause to file charges against the Plaintiff in this case. Cpl. Munch was provided with facts gleaned by the Office of Children and Youth as well as the Erie County Detective and Assistant District Attorney assigned to the Child Advocacy Center who investigated this matter. Based upon the results of these investigations and the interviews of the victim and the Plaintiff, Cpl. Munch was directed by the Assistant District Attorney to file criminal charges against the Plaintiff.

It is long been the law in Pennsylvania that information provided by certain classes of persons may be sufficient to establish probable cause. "It is well-settled that the uncorroborated confession of an accomplice which implicates the suspect will supply the probable cause for a warrantless arrest. Similarly, the statement of a victim, identifying the perpetrator of a crime, has been found sufficient to establish probable cause for that person's arrest. Further, information provided by an eyewitness whose identity is known has also been deemed sufficient. Thus, in determining whether probable cause exists, we have tended to credit information supplied by one who has some direct personal knowledge of the crime." <u>Commonwealth v. Stokes</u>, 480 Pa. 38, 389 A. 2d 74, 77 (1978), (citations omitted).

It is also long been the law in Pennsylvania that "criminal proceedings initiated upon advice of counsel are conclusively presumed to be supported by probable cause when the advice of counsel was sought in good faith and the advice was given after full disclosure of the facts to the attorney." <u>Kelley v. General Teamsters, Chauffeurs and Helpers, Local Union 249</u>, 518 Pa. 517, 544 A. 2d 940, 942 (1988); *citing* <u>Stritmatter v. Nese</u>, 347 Pa. 9, 31 A. 2d 510 (1943). See

also, Psinakis v. Psinakis, 221 F.2d 418 (3rd Cir. 1955). The Court's holding is based upon the

Restatement of the Law, Second, Torts, Section 666 which provides:

> § 666 Effect of Advice of Counsel
>
> (1) the advice of an attorney at law admitted to practice and practicing in the state
> in which the proceedings are brought, whom the client has no reason to be believe
> to have a personal interest in obtaining a conviction, is conclusive of the existence
> of probable cause for initiating criminal proceedings in reliance upon the advice if
> it is
>
> (a) sought in good faith, and
>
> (b) given after a full disclosure of the facts within the accuser's knowledge and
> information.

Restatement of the Law, Second, Torts, Section 666 (1).

> Comment A of Section 666 provides

>> Under the rules stated in this Section the advice of counsel establishes
>> the existence of probable cause only when the person consulted is an
>> attorney admitted to practice either in the state where the proceedings
>> are brought or in another state under the conditions stated in
>> Subsection (2). **This Section includes a prosecuting attorney.** The
>> advice of a person such as a justice of the peace who is not admitted to
>> practice as an attorney, but who is believed to be so conversant with
>> the law on the subject as to make his advice reliable, is not sufficient
>> to establish the existence of probable cause under the rule stated in this
>> Section.

Restatement of the Law, Second, Torts, Section 666, Comment A. (Emphasis added.)

Cpl. Munch reviewed the investigative reports and photographs from the Office of

Children and Youth and was provided with information from an interview of the victim

conducted by the Erie County Detective assigned to the Child Advocacy Center. After receiving

this information, Cpl. Munch was directed by the District Attorney's Office to file criminal

charges against the Plaintiff. Since the Assistant District Attorney handling this investigation

concluded that sufficient probable cause existed to file criminal charges, the advice Munch

received is conclusive of probable cause under §666 and the cases cited. Further, the charges were filed only after the Magisterial District Judge reviewed the affidavit of probable cause and independently determined that probable cause existed for the charges. Under Pennsylvania law, the finding of probable cause by a neutral and detached magistrate is conclusive evidence of the existence of probable cause. Devatt v. Lohenitz, 338 F. Supp. 2d 588 (E.D. Pa. 2004); citing Kelly v. General Teamsters, Local Union 249, supra. Also, because no reasonable person could find from the facts of record that Cpl. Munch lacked probable cause to arrest, the Defendant is shielded by qualified immunity and therefore is entitled to Summary Judgment as a matter of law. See Huffaker v. Bucks County District Attorney's Office, 758 F. Supp. 287, (E.D. Pa. 1991).

Federal courts have held that an arrest based on probable cause cannot become the source of constitutional claims for false imprisonment or malicious prosecution. Baker, 443 U.S. at 143-144; Dowling v. City of Philadelphia, 855 F.2d 135 (3d Cir. 1988)(holding that section 1983 claim would not be found where probable cause existed for the underlying arrest); Brown, 910 F. Supp. at 1074 (holding that it is "clear that an arrest based on probable cause could not become the source of a claim for false imprisonment"). Further, in order to assert a Section 1983 action for malicious prosecution, the Plaintiff must show that (i) Defendant initiated a criminal proceeding, (ii) the proceeding terminated in Plaintiff's favor, (iii) the proceeding was initiated without probable cause, and (iv) the Defendant acted maliciously or for a purpose other than in the interest of justice. Irvin v. Borough of Darby, 937 F. Supp. 446 (E.D. Pa. 1996). Therefore, since Cpl. Munch possessed probable cause to arrest the Plaintiff, any claims of unlawful arrest and malicious prosecution should be dismissed.

In the case at bar, Plaintiff also claimed that her Fourteenth Amendment substantive due process rights were violated. To prevail on a substantive due process claim under section 1983, Plaintiffs must demonstrate that an arbitrary and capricious act by the municipal defendant deprived him of a protected property interest. Taylor Inv., LTD v. Upper Darby Township, 983 F.2d 1285, 1292 (3rd Cir. 1993). The hallmark of a substantive due process claim in the land-use context is the deliberate and arbitrary abuse of government power. Government conduct is arbitrary and irrational where it is not rationally related to a legitimate governmental purpose. Sameric Corp. of Delaware v. City of Philadelphia, 142 F.3d 582, 595 (3d Cir. 1998). In the instant matter, there are no specific allegations by Plaintiff that would constitute a violation of her due process rights. Further, the arrest documents reveal that the Plaintiff's rights under the Fourteenth Amendment were protected at all times and therefore this allegation has no merit. Accordingly, the plaintiff's allegations that her due process rights were violated should be dismissed as a matter of law.

Since the Plaintiff can not show that the Defendant Munch has deprived her of a right secured by the Constitution and laws of the United States, she has failed to set forth a viable cause of action for a violation of her Civil Rights. Therefore, these claims must be dismissed.

**E.    PLAINTIFF'S CLAIMS ARE BARRED BY THE ROOKER-FELDMAN DOCTRINE**

Under the *Rooker-Feldman* doctrine, a Federal District Court lacks the subject matter jurisdiction to review state court adjudications or evaluate constitutional claims that are "inextricably intertwined" with the state court's decision. Guarino v. Larson, 1151, 1156 (3rd Cir. 1993), citing District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483 n.16

(1983) and <u>Rooker v. Fidelity Trust Company</u>, 263 U.S. 413, 414 (1923). A federal district court should not exercise jurisdiction over constitutional claims that have been previously litigated in a state judicial proceeding or that are inextricably intertwined with a prior state adjudication. <u>Gulla v. North Strabane</u>, 146 F.3d 169, 171 (3d Cir. 1998); <u>FOCUS v. Allegheny County Court of Common Pleas</u>, 75 F.3d 834, 839-40 (3d Cir. 1996); <u>accord District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462, 482 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413, 416 (1923). The Supreme Court in <u>Feldman</u> explained that, for the purposes of determining jurisdiction, a judicial proceeding resulting in a state adjudication occurs where the proceeding "investigate[s], declare[s], and enforce[s] liabilities ... on present or past facts and under laws supposed already to exist." <u>Feldman.</u>, 460 U.S. at 479 quoted in <u>Guarino</u>, 11 F.3d 1151, 1157 (declining jurisdiction based upon *Rooker-Feldman* doctrine).

The Third Circuit held in <u>Gulla</u> that "if the relief requested in the federal action would effectively reverse the state decision or void its ruling," the federal court should deny the claim on jurisdictional grounds. <u>Gulla.</u>, 146 F.3d at 171 quoting <u>Charchenko v. City of Stillwater</u>, 47 F.3d 981, 983 n.1 (8th Cir. 1995). The <u>Gulla</u> court held that, under the *Rooker-Feldman* doctrine, a federal district court could exercise jurisdiction only if it could grant the relief requested without disturbing the state adjudication. <u>Id.</u> The *Rooker-Feldman* doctrine also "encompass[es] final decisions of lower state courts." <u>In re General Motors Corp. Products Liability Litigation</u>, 134 F.3d 133, 143 (3d Cir. 1998) (declining to exercise jurisdiction under *Rooker-Feldman* doctrine). Federal District Courts lack jurisdiction once a state court has adjudicated an issue because Congress has conferred only original jurisdiction not appellate jurisdiction on the District Courts. <u>Rooker</u>, 263 U.S. at 416.

Pursuant to Feldman, Ms. Bibb's criminal charges and any related proceedings (including proceedings with the Erie County Office of Children and Youth) were clearly judicial proceedings that resulted in a state adjudications which investigated and prosecuted the facts of her criminal case. If this Court were to grant the relief requested in Ms. Bibb's Complaint or Amended Complaint, its decision would effectively reverse the state decision or void its ruling and would at least disturb the state adjudication. Accordingly since the state court has adjudicated the issues raised in Ms. Bibb's Complaint and Amended Complaint, this Court lacks jurisdiction. More importantly, the District Courts are not courts of appellate jurisdiction.

The constitutional issues in the present action are inextricably intertwined with the issues presented in Ms. Bibb's related state court/criminal actions. She seeks to place the federal court in a position of an appellate court which is an area into which the federal courts have clearly been forbidden. See Gulla, supra. If this Court were to allow this action to proceed it would create an impermissible conflict in the jurisdictions between the state and federal court. Thus, Ms. Bibb's claims are subject to the *Rooker-Feldman* preclusion as the instant dispute is not properly subject to the federal court's jurisdiction. Accordingly, any of Ms. Bibb's claims relating to her state court criminal or Children's Services proceedings must be dismissed as a matter of law.

F.     **PLAINTIFF HAS FAILED TO STATE A CLAIM UNDER PENNSYLVANIA STATUTORY, CONSTITUTIONAL OR COMMON LAW**

For an action of false arrest to succeed, it must appear that the process used for the arrest was void on its face. Lynch v. Johnston, 76 Pa. Commonwealth Ct. 8, 463 A. 2d 87 (1983). To succeed in an action for malicious prosecution, the Plaintiff must prove that the Defendant instituted proceedings against the Plaintiff (1) without probable cause, (2) with malice, and (3)

the proceedings must have terminated in favor of the Plaintiff. Kelley v. General Teamsters, Chauffeurs, and Helpers, Local Union 249, 518 Pa. 517, 544 A. 2d 940 (1988). Under Pennsylvania law, an arrest based upon probable cause cannot become the source of a claim for false arrest or imprisonment or for malicious prosecution. Renk v. City of Philadelphia, 537 Pa. 68, 641 A.2d 289 (1994). In the case at bar, the Plaintiff's arrest was clearly based upon probable cause and therefore Plaintiff's potential common law claims for false arrest and malicious prosecution are without merit and should be dismissed.

Next, if the Court concludes that the Plaintiff has raised claims of libel and/or slander, as defined under Pennsylvania law at 42 Pa.C.S. §8343(a), the Plaintiff has the burden of proving:

(1)     The defamatory character of the communication.

(2)     Its publication by the Defendant.

(3)     Its application to the Plaintiff.

(4)     The understanding by the recipient of its defamatory meaning.

(5)     The understanding by the recipient of it as intended to be applied to the Plaintiff.

(6)     Special harm resulting to the Plaintiff from its publication.

(7)     Abuse of a conditionally privileged occasion.

42 Pa.C.S. §8343(a).

Since Plaintiff does not specify how she was defamed, one can only surmise that this claim is based upon an allegation of false arrest and malicious prosecution. Therefore, if Plaintiff has raised defamation claims based upon false arrest and malicious prosecution, the same should be dismissed. Furthermore, the Plaintiff does not allege any facts to support the element that Defendants published the criminal complaint, witness statements, or any other item

which could have possibly defamed her. Therefore this claim is wholly without merit and should be dismissed.

In addition, Pennsylvania law affords absolute immunity for the defamatory statements contained in pleadings, if relevant to the proceeding in which they are made. Oweida v. The Tribune-Review Publishing Company, 410 Pa. Super 112, 599 A.2d 230, 233 (1991); quoting Greenburg v. Aetna Insurance Co., 427 Pa. 511, 235 A.2d 576 (1967). Therefore, if the Court finds that Plaintiff has raised a claim for libel/slander based upon the contents of the criminal complaint and/or affidavit of probable cause drafted by Cpl. Munch, immunity would apply since these documents were the initial pleadings in Plaintiff's criminal case. Therefore, this claim should be dismissed.

### G.    DEFENDANT IS IMMUNE FROM SUIT UNDER PENNSYLVANIA LAW

In addition to qualified immunity under federal law, Cpl. Munch is immune from common law claims under the Political Subdivision Tort Claims Act, 42 Pa.C.S.A. §8541, which immunizes municipalities and their employees from liability for damages to any person caused by the negligence of the municipality or its employees. Section 8542 of the Act provides eight enumerated exceptions to the general immunity enjoyed by municipal defendants. Section 8545 of the Act extends the immunity afforded the agencies to their employees when acting in the scope of employment. Finally, section 8550 of the Act withdraws the immunity afforded to the employee under section 8545 if the actions alleged were performed willfully. Irvin v. Borough of Darby, 937 F. Supp. at 451-452; Buskirk v. Seiple, 560 F. Supp. 247, 252 (E.D. Pa. 1983).

In the instant case, the evidence presented establishes that the Plaintiff's arrest was based upon probable cause and therefore the Cpl. Munch acted appropriately and within the bounds of the law at all times. Consequently, Cpl. Munch has not surrendered his immunity under section 8550. Furthermore, none of the allegations raised by Plaintiff constitute an exception to immunity under section 8542. Therefore, Cp. Munch is immune from any common law claims raised by the Plaintiff by virtue of the Political Subdivision Tort Claims Act.

H.   **NEED FOR A MORE DEFINITE STATEMENT**

Although the Plaintiff was ordered to file a more definite statement, her Amended Complaint is more convoluted and confusing than the original. Plaintiff apparently can not comply with F.R.C.P. 8(a) which requires her to set forth a claim for relief which contains a short and plain statement of her claim which evidences that she is entitled to relief. The Defendant believes that any additional opportunities for Plaintiff to file an amended complaint would be futile in light of the documents she has filed of record. Therefore, Defendant Munch requests this Court to dismiss Plaintiff's claims for the reasons set forth above.

In the alternative, if this Court finds that the request of Cpl. Munch for dismissal of Plaintiff's complaint is premature or that there are material issues in dispute, the Defendant requests that this Court require the Plaintiff to file an second amended complaint in which she clearly and plainly sets forth her specific allegations against each Defendant. Federal Rule of Civil Procedure 12(e) allows the Court to require a more definite statement by the Plaintiff if the allegations in her complaint are "so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading." F.R.C.P. 12(e).

WHEREFORE, the Defendant, Corporal Frederick Munch, respectfully requests an Order from this Honorable Court dismissing Plaintiff's allegations against him with prejudice, or, in the alternative, directing the Plaintiff to file a more definite statement specifically setting forth the allegations made by the Plaintiff against Defendant Munch as more fully set forth herein.

Respectfully submitted,

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**

By: _____

Patrick M. Carey, Esquire
PA I.D. # 50171
Renaissance Centre
1001 State Street, Suite 1400
Erie, Pennsylvania 16501
(814) 461-7803

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VICTORIA BIBBS,                    :
                                   :
        *Plaintiff*                :
                                   :
    v.                             :    No. 05-41 E
                                   :
SUSAN D. STROHMEYER,               :
FREDERICK G. MUNCH, KATHY          :
ZBORGROWSKI and JOHN               :
CAVANAGH,                          :
                                   :
        *Defendants*               :

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the within Brief in

Support of Defendant Munch's Second Motion to Dismiss and/or Motion for More Definite

Statement Pursuant to Federal Rules of Civil Procedure 12 (b)(6) and 12(e) was mailed to the

following listed below this 20th day of September, 2005 by United States First Class

mail, postage pre-paid.

Victoria Bibbs                     Richard A. Lanzillo, Esquire
6023 Glade Drive                   KNOX, MCLAUGHLIN, GORNALL & SENNETT
Erie, PA 16509                     120 West 10th Street
                                   Erie, PA 16501


                          MARSHALL, DENNEHEY, WARNER,
                              COLEMAN & GOGGIN


                          By: _____
                              Patrick M. Carey, Esquire

\16_A\LIA\B\PBC\LI PG\S1998\PBC\19173\00187