**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **VICTORIA BIBBS,** ) | |
|     Plaintiff ) | |
| ) | |
| vs. ) | C.A. No. 05-41 Erie |
| ) | District Judge Cohill |
| **FREDERICK G. MUNCH, et al.** ) | Magistrate Judge Baxter |
|     Defendants. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I      RECOMMENDATION**

It is respectfully recommended that the second motion to dismiss of Defendant Frederic Munch [Document #28] be granted; the motion to dismiss amended complaint of Defendants Zborgowski and Cavanaugh [Document # 30] be granted; and the motion to dismiss or for partial summary judgment filed by Plaintiff [Document # 33] be denied. By separate order, Defendant Munch's motion for more definite statement [Document #28] is denied; and Defendants Zborgowski's and Cavanaugh's motion for more specific pleading [Document # 30] is denied.

**II      REPORT**

Plaintiff Victoria Bibbs, proceeding *pro se*, filed a civil rights action against Magisterial District Judge Susan Strohmeyer, Frederick Munch, a Millcreek Police Corporal, Kathy Zborgowski, a guidance counselor at J.S.Wilson Middle School and John Cavanagh, an Assistant Principal at J.S. Wilson Middle School. Defendant Strohmeyer was dismissed from the action pursuant to Court Order dated July 26, 2005. As Plaintiff's allegations were difficult to decipher from her filings, she was ordered to file a more definite statement of her claims. She did so by way of a lengthy document, filed on August 26, 2005, which was more difficult to break down into statements of claims that had been the original complaint.

In an effort to move the case forward, the Court held a hearing on October 28, 2005,

rather than grant new motions for more definite statement. During that hearing, Plaintiff explained the events that prompted her complaint.

Plaintiff alleges that on March 1, 2004, J.S. Wilson Middle School sent Plaintiff and her husband a letter stating that their son, Edward Bibbs, had been suspended from school for possession of marijuana with intent to sell. (See Document #14, Exhibit 6). Plaintiff alleges that she was not contacted by the school=s assistant principal, Defendant Cavanagh, or guidance counselor, Defendant Zborgowski, before her son was questioned. During questioning, Edward Bibbs allegedly stated to school officials that he was afraid to go home because his mother abuses him. (See Document #26 at page 22). The school filed a report with the Office of Children and Youth (AOCY@), and an investigation followed, led by Agent Gene Walczak. Id.

On March 19, 2004, Defendant Munch received a report from Agent Walczak detailing the results of his investigation of the complaint he received from Millcreek School officials. As part of his investigation, Walczak interviewed both the Plaintiff and Edward. Walczak=s report detailed a continuous pattern of abuse from 1994-2004, during which Plaintiff allegedly used a belt and extension chord to hit Edward. Walczak included pictures of Edward=s back, shoulders, and arms, which allegedly revealed over 62 scars. (See Document #10, Exhibit C at page 3).

On April 27, 2004, Plaintiff was arrested by Defendant Munch, and charged with endangering the welfare of a child. (See Document #10, Exhibit A at & 11). Plaintiff claims that she was brought to trial on this charge, which resulted in a hung jury. The record does not reflect whether or not the state has re-tried Plaintiff.

In the October hearing, Plaintiff stated that she is charging Defendant Munch with false arrest, and for searching her home and car without a warrant to do so.[1] (See Document #35, page 4 at & 4). Plaintiff also states a claim against Defendants Cavanagh and Zborgowski for conspiring against her when they accused her son Edward of selling drugs, when they filed

---

[1] Plaintiff complains that her car and home were searched illegally, but these searches appear to have been based on an outstanding arrest warrant for her husband. (Transcript of Hearing at pp.29-30.)

2

charges of child abuse against her dating back to 1994, and when they caused Edward to be suspended from J.S. Wilson Middle School. (See Document #35, page 25, & 3 and & 6). Plaintiff also claims that Edward was coerced to say that he was abused and that he later sent her a Christmas card apologizing for lying and getting her in trouble.

In response, Defendant Munch argued that there was no false arrest, citing the Affidavit of Probable Cause, which included photographs of Edward showing 62 scars on his body, and claims by Edward that the scars came from his mother and father abusing him. (See Document #35, page 28 at & 8). Defendants Cavanagh and Zborgowski argued that during their questioning of Edward Bibbs about selling drugs at school, he indicated that he was being abused, and these Defendants are required by law to report allegations of child abuse to the proper authorities. (See Document #35, page 33 at & 2).

As relief for her claims, Plaintiff seeks restitution for her arrest in the form of monetary damages, the return of her children, and the re-establishment of her home school. (See Document # 1 at & 17). All Defendants have moved to dismiss the charges against them.

   **A.    Standards of Review**

       **1.    *Pro Se* Litigants**

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" and can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Haines v. Kerner, 404 U.S. 519, 520-521(1972), quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. Boag v. MacDougall, 454 U.S. 364 (1982). Under our liberal pleading rules, during the initial stages of litigation, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir. 1997). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6)

3

standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

### 2.     Motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Neitzke v. Williams, 490 U.S. 319 (1989); Estelle v. Gamble, 429 U.S. 97 (1976). The motion cannot be granted unless the court is satisfied "that no relief could be granted under any set of facts that could be proved consistent with the allegations." Hishon v. King & Spaulding, 467 U.S. 69, 73 (1984). The issue is not whether the plaintiff will prevail at the end but only whether he should be entitled to offer evidence to support his claim. Neitzke; Scheuer v. Rhodes, 419 U.S. 232 (1974). Rule 8(a) of the Federal Rules of Civil Procedure states that a pleading must set forth a claim for relief which contains a short and plain statement of the claim showing that the pleader is entitled to relief. Therefore, in order to survive a motion to dismiss for failure to state a claim, the complaint must set forth sufficient information to suggest that there is some recognized legal theory upon which relief can be granted. Where a motion to dismiss is supported by affidavits or other factual matters, the motion may be converted into a motion for summary judgment. F.R.Civ.P. 12(b). Once a motion to dismiss has been converted, summary judgment is appropriate if, drawing all inferences in favor of the non-moving party, ". . . the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

### 3. Motion for summary judgment pursuant to Federal Rule of Civil Procedure 56

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Rule 56(e) further provides that when a motion for summary judgment is made and supported, "an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Id.

A district court may grant summary judgment for the defendant when the plaintiff has failed to present any genuine issues of material fact. See Fed.R.Civ.P. 56(c); Krouse v. American Sterilizer Co., 126 F.3d 494, 500 n.2 (3d Cir. 1997). The moving party has the initial burden of proving to the district court the absence of evidence supporting the non-moving party's claims. Celotex Corp. v. Catrett, 477 U.S. 317 (1986); Country Floors, Inc. v. Partnership Composed of Gepner and Ford, 930 F.2d 1056, 1061 (3d Cir. 1990). Further, "[R]ule 56 enables a party contending that there is no genuine dispute as to a specific, essential fact to demand at least one sworn averment of that fact before the lengthy process of litigation continues.'" Schoch v. First Fidelity Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990) quoting Lujan v. National Wildlife Federation, 497 U.S. 871 (1990).

The burden then shifts to the non-movant to come forward with specific facts showing a genuine issue for trial. Matsushita Elec. Indus. Co. v Zenith Radio Corp., 475 U.S. 574 (1986); Williams v. Borough of West Chester, Pa., 891 F.2d 458, 460-461 (3d Cir. 1989)(the non-movant must present affirmative evidence - more than a scintilla but less than a preponderance - which supports each element of his claim to defeat a properly presented motion for summary judgment). The non-moving party must go beyond the pleadings and show specific facts by affidavit or by information contained in the filed documents (i.e., depositions, answers to interrogatories and admissions) to meet his burden of proving elements essential to his claim. Celotex, 477 U.S. at 322; Country Floors, 930 F.2d at 1061.

A material fact is a fact whose resolution will affect the outcome of the case under

5

applicable law. Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986). Although the court must resolve any doubts as to the existence of genuine issues of fact against the party moving for summary judgment, Rule 56 "does not allow a party resisting the motion to rely merely upon bare assertions, conclusory allegation or suspicions." Firemen's Ins. Co. of Newark, N.J. v. DuFresne, 676 F.2d 965, 969 (3d Cir. 1982). Summary judgment is only precluded if the dispute about a material fact is "genuine," i.e., if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 247-249.

### Motion to Dismiss of Defendant Munch

Plaintiff's claims against Officer Munch are based on his involvement in the complaint against her and in her arrest. She alleges that her civil rights were violated by the arrest on false charges and the ensuing trial on the charge of endangering the welfare of a child, which resulted in a hung jury. Defendant Munch moves for dismissal of the claims against him because there was probable cause for the arrest, and in any event, he enjoys qualified immunity from damages.

First, an arrest warrant issued by a magistrate or judge does not, in itself, shelter an officer from liability for false arrest. See Sherwood v. Mulvihill, 113 F.3d 396, 399 (3d Cir.1997). Because Plaintiff was arrested pursuant to a facially valid warrant, to succeed on her § 1983 claim for false arrest, she must prove that (1) the Defendant Munch "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant;" and (2) that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786-87 (3d Cir.2000) (internal quotation marks and citations omitted).

Defendant Munch has proffered the investigative report of the Erie County Detective and the Assistant District Attorney, which included photographs of scars on Plaintiff's son consistent with the abuse charged by him, in support of his affidavit of probable cause. In response, Plaintiff claims that she did not abuse her son, that the hung jury supports her allegations that the charge was false, and that she received a note from her son apologizing for allegedly lying about

the abuse and getting her into trouble. Although Plaintiff's allegations that Defendant Munch made false statements on the affidavit stem from her insistence that the charges are false, they are nonetheless sufficient to state a cognizable civil rights claim on their face. Proof of them is a different matter, but one left for another day if Defendant Munch does not succeed on his qualified immunity defense.

The Court of Appeals for the Third Circuit recently reviewed the often difficult standard for application of qualified immunity in Torisky v. Schweiker, --- F.3d ----, 2006 WL 1118933 (3rd Cir. April 28, 2006):

> [Officials] will be entitled to [qualifed] immunity if " 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " Wilson v. Layne, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). "A court evaluating a claim of qualified immunity 'must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all, and if so, proceed to determine whether that right was clearly established at the time of alleged violation.' " Id. (quoting Conn v. Gabbert, 526 U.S. 286, 290, 119 S.Ct. 1292, 143 L.Ed.2d 399 (1999)). "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity. On the other hand, if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." Saucier v. Katz, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). This second inquiry "must be undertaken in light of the specific context of the case." Id.

Id. The threshold inquiry is whether or not Plaintiff is alleging the violation of a constitutional right. Here, Plaintiff alleges a violation of her constitutional right to be free from unreasonable searches and seizures.

Next, the Court is required to inquire as to whether this particular right is clearly established. The requirement for constitutional probable cause for an arrest warrant is well-settled. An officer charged under § 1983 for false arrest is not entitled to qualified immunity if "a reasonably well-trained officer in [defendant's] position would have known that [the] affidavit [in support of the arrest warrant] failed to establish probable cause and that [the officer] should not have applied for the warrant." Malley v. Briggs, 475 U.S. 335, 345, 106 S.Ct. 1092, 89

7

L.Ed.2d 271 (1986). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." Id. at 344-45. Probable cause to obtain an arrest warrant exists "where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." Brinegar v. United States, 338 U.S. 160, 175-76, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949).  Under these standards, and the report and photographs proffered, Officer Munch is entitled to qualified immunity for damages.[2]

## Motion to Dismiss and/or For Summary Judgment of Defendants Zborgowski and Cavanaugh

Plaintiff blames Defendants Zborgowski and Cavanaugh for starting the investigative process that led to Plaintiff's arrest and trial when they reported her for alleged child abuse. Although in the October hearing and in her papers, Plaintiff complains that these Defendants questioned her son about selling drugs without notifying her, that they did not follow proper procedure, and that they wrongfully suspended her son based on the drug accusations, this action is not brought on behalf of her son for reinstatement, nor can Plaintiff collect damages on her own behalf for any violation of Eddie's civil rights in the school suspension process.

Instead, Plaintiff clarified her claims against these two Millcreek School District employees in the hearing by alleging that they so intimidated her son by their accusations and questioning that he lied to them about being beaten by his parents.  In this regard, she charges them with conspiracy to violate her civil rights by, in essence, starting the process that led to her arrest and trial on child endangerment charges.

---

[2] Plaintiff also seeks injunctive relief in the form of the return of her children and the re-establishment of her home school.  As Officer Munch neither took custody of Plaintiff's children nor closed her home school, he is not the appropriate defendant for this relief.

In order to withstand a motion to dismiss in violation of 42 U.S.C. § 1985, Plaintiff must allege "(1) a conspiracy; (2) for the purpose of depriving any person or class of person of equal protection of the laws or equal privileges and immunities; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." Farber v. City of Paterson, 440 F.3d 131, 134 (3d Cir. 2006)(citing United Brotherhood of Carpenters, Local 610 v. Scott, 463 U.S. 825, 829, 103 S.Ct. 3352, 3356, 77 L.Ed.2d 1049, 1054 (1983)). The claim must aver specific facts to support the existence of an unlawful agreement. Gordon v. Lowell, 95 F.Supp.2d 264, 2000 WL 488678, at *5 (E.D.Pa. Apr.16, 2000). A conclusory statement that the defendants conspired together is insufficient to state a section 1985 claim. D.R. by L.R. v. Middle Bucks Area Vocational Technical School, 972 F.2d 1364, 1377 (3d Cir.1992).

Here, Plaintiff has broadly alleged that the Defendants conspired to deprive her of her constitutional rights; however, her complaint includes no facts suggesting that there was any agreement between these Defendants. On this basis alone, Plaintiff's section 1985 claim should be dismissed.

These Defendants also argue that a qualified immunity applies to them when they report a claim of child abuse as required by state law. The Child Protective Services Law, P.L. 1240, No. 206, § 2, codified at 23 Pa.Cons.Stat.Ann. § 6301 et seq. (1990), is the state law in question. Under that statutory scheme, enumerated persons are required to report possible child abuse "when they have reason to believe, on the basis of their medical, professional or other training and experience" that a particular child with whom they have contact is an abused child. 23 Pa.Cons.Stat.Ann. § 6311(a). School teachers and administrators are enumerated persons. 23 Pa.Cons.Stat.Ann. § 6311(b). A person who fails to make a required report is subject to criminal liability. 23 Pa.Cons.Stat.Ann. § 6319.

Asking questions in the context of exercising such judgment is entirely reasonable. When these defendants did so, and reported the abuse charged by Plaintiff's son, they were acting within their discretionary function; therefore, they would be entitled to qualified immunity for

9

their actions if the threshold inquiry produces an allegation of a constitutional violation. In fact, it does not.

In Saucier v. Katz, the Supreme Court cautioned that qualified immunity reviews were unnecessary if no constitutional right applied to the allegations: "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." Id., 533 U.S. 194, 201. Here, Plaintiff claims that her civil rights were violated because she was falsely imprisoned and prosecuted for alleged child abuse, and that her children and school were taken away from her. These Defendants did not arrest Plaintiff or file charges against her. They did not take custody of her children or close her home school. They simply reported the information that Plaintiff's son gave them, as they must under state law. There is a disconnect between these Defendants and Plaintiff's complaint. Even if these Defendants were found to have reported child abuse charges against Plaintiff and her husband that were false, as Plaintiff alleges, no constitutional violation is stated. The complaint against them should be dismissed.

## III   CONCLUSION

For the foregoing reasons, it is respectfully recommended that the second motion to dismiss of Defendant Frederic Munch [Document #28] be granted; the motion to dismiss amended complaint of Defendants Zborgowski and Cavanaugh [Document # 30] be granted; and the motion to dismiss or for partial summary judgment filed by Plaintiff [Document # 33] be denied. By separate order, Defendant Munch's motion for more definite statement [Document #28] is denied; and Defendants Zborgowski's and Cavanaugh's motion for more specific pleading [Document # 30] is denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Local Rule 72.1.4B, the parties are allowed ten (10) days from the date of service to file written objections to this report. Any party opposing the objections shall have seven (7) days from the date of service

of objections to respond thereto.  Failure to timely file objections may constitute a waiver of any appellate rights.

>                               S/ Susan Paradise Baxter
>                               SUSAN PARADISE BAXTER
>                               Chief United States Magistrate Judge

Dated: June 2, 2006